UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENELL THORPE,<br><br>              Plaintiff,<br><br>       v.<br><br>C. HEARN, et al.,<br><br>              Defendants. | No.  2: 19-cv-1974 KJN P<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

I.      Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on claims against defendants Parham, Hearn and Erickson.

Pending before the court is defendants' March 10, 2020 motion for partial summary judgment on the grounds that plaintiff failed to administratively exhaust all of his claims against defendant Parham and all but one of his claims against defendant Hearn.  (ECF No. 31.) Defendants' motion for partial summary judgment does not address plaintiff's claims against defendant Erickson.

For the reasons stated herein, the undersigned recommends that defendants' motion be granted in part and denied in part.

1     II.     Legal Standard for Summary Judgment

2          Summary judgment is appropriate when it is demonstrated that the standard set forth in

3     Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

4     movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

5     judgment as a matter of law."  Fed. R. Civ. P. 56(a).

6               Under summary judgment practice, the moving party always bears
              the initial responsibility of informing the district court of the basis
7             for its motion, and identifying those portions of "the pleadings,
              depositions, answers to interrogatories, and admissions on file,
8             together with the affidavits, if any," which it believes demonstrate
              the absence of a genuine issue of material fact.
9

10    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

11    56(c)).

12         "Where the nonmoving party bears the burden of proof at trial, the moving party need

13    only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

14    Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

15    387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

16    committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

17    burden of production may rely on a showing that a party who does have the trial burden cannot

18    produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

19    should be entered, after adequate time for discovery and upon motion, against a party who fails to

20    make a showing sufficient to establish the existence of an element essential to that party's case,

21    and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

22    "[A] complete failure of proof concerning an essential element of the nonmoving party's case

23    necessarily renders all other facts immaterial."  Id. at 323.

24         Consequently, if the moving party meets its initial responsibility, the burden then shifts to

25    the opposing party to establish that a genuine issue as to any material fact actually exists.  See

26    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

27    establish the existence of such a factual dispute, the opposing party may not rely upon the

28    allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

2

form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

3

By notice provided on February 27, 2020 (ECF No. 29) and March 10, 2020 (ECF No. 31-1) plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III.    Legal Standard for Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint."  Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016).  The exhaustion requirement applies to all prisoner suits relating to prison life.  Porter v. Nussle, 534 U.S. 516, 532 (2002).  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

As the U.S. Supreme Court explained in Ross, 136 S. Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.... [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Id. (internal citations omitted).

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process.  Reyes v. Smith, 810

4

F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

IV.    Plaintiff's Claims

This action proceeds on plaintiff's amended complaint filed October 30, 2019 (ECF No. 11.)

Plaintiff alleges that on July 4, 2018, plaintiff filed a grievance against defendant Parham alleging that on that date, defendant Parham engaged in unprofessional conduct.  Plaintiff alleges that on August 8, 2018, defendant Parham filed a retaliatory rules violation report against plaintiff, alleging that plaintiff forged a document.  Plaintiff alleges that on August 28, 2018, defendant Parham filed another retaliatory rules violation report against plaintiff, charging plaintiff with disobeying staff.

Plaintiff alleges that he asked defendant Parham why he kept writing plaintiff up. Defendant responded, "You're the one who wrote me up first; you started it."

On August 30, 2018, plaintiff filed a grievance alleging that defendant Parham filed two rules violation reports against plaintiff in retaliation for plaintiff filing a grievance against him on July 4, 2018.

Plaintiff alleges that on September 14, 2018, he was summoned to Building-4 Control Tower by defendant Hearn.  Plaintiff alleges that defendant Hearn told plaintiff that if he (plaintiff) did not withdraw the 602 appeal that plaintiff had previously filed against defendant Parham, defendant Hearn would "make you pay.  Snitches get popped around here, and I'm going to have one of my inmates give you a little taste of what you got coming."

Later on September 14, 2018, inmate Sotolongo attacked plaintiff on the track in front of Building 4.  Plaintiff alleges that inmate Sotolongo said to him, "The tower cop Hearn just told me you were snitching, and sent me to handle you.  It's nothing personal, just following orders."

While plaintiff and inmate Sotolongo struggled, defendant Hearn aimed his 40 mm launcher directly at plaintiff and ordered plaintiff to get down.  Defendant Hearn then fired one

1    round, which struck plaintiff's right thigh.  Another officer then threw an O.C. Blast Grenade.

2    Plaintiff and inmate Sotolongo stopped fighting and laid down on the ground.  While plaintiff laid

3    on the ground, defendant Hearn shot plaintiff in the face with one round from his 40 mm

4    launcher.

5            Plaintiff alleges that defendant Erickson failed to treat the injuries plaintiff suffered as a

6    result of being shot in the face.

7            Plaintiff alleges that on October 27, 2018, he informed custody personnel about his safety

8    concerns and fear of retaliation, apparently from defendants Hearn and Parham.  Plaintiff was

9    then placed in administrative segregation ("ad seg") for his own safety.  Plaintiff alleges that on

10   November 1, 2018, defendant Parham served plaintiff with a property receipt, showing that the

11   majority of plaintiff's property was missing.  Plaintiff alleges that defendant Parham denied him

12   his property in retaliation for plaintiff filing grievances against him.

13           This action proceeds on the following legal claims:  1) defendant Hearn used excessive

14   force, in violation of the Eighth Amendment, when he allegedly shot plaintiff in the face with a

15   40 mm impact round on September 14, 2018; 2) defendant Parham allegedly retaliated against

16   plaintiff for filing a grievance against him on July 4, 2018, by filing two rules violation reports

17   against plaintiff in August 2018; 3) defendant Parham allegedly retaliated against plaintiff for

18   filing grievances against him, including a grievance filed against defendant Parham on August 30,

19   2018, by denying plaintiff access to his property after plaintiff was moved to administrative

20   segregation ("ad seg"); 4) defendant Hearn allegedly retaliated against plaintiff for filing a

21   grievance against defendant Parham by inciting inmate Sotolongo to attack plaintiff and by

22   shooting plaintiff in the face with the 40 mm round on September 14, 2018; 5) defendant

23   Erickson provided inadequate medical care in violation of the Eighth Amendment when

24   defendant Erickson failed to treat injuries plaintiff suffered as a result of being shot in the face

25   with the 40 mm impact round on September 14, 2018; and 6) defendant Hearn allegedly violated

26   the Eighth Amendment by allegedly telling inmate Sotolongo that plaintiff was a snitch and

27   sending inmate Sotolongo to "handle" plaintiff.  (See ECF No. 13.)

28   ////

1  V.  <u>Defendants' Summary Judgment Motion</u>

2        In the pending summary judgment motion, defendants argue that plaintiff did not

3  administratively exhaust any of his claims against defendant Parham.  Defendants argue that

4  plaintiff exhausted only one of his claims against defendant Hearn, i.e., the claim that defendant

5  Hearn used excessive force when he shot plaintiff in the face with the 40 mm impact round.

6        The undersigned describes and discusses defendants' evidence herein.

7        Defendants submitted evidence demonstrating that during the relevant time frame (July

8  2018 to October 2019), plaintiff processed two non-medical grievances through the third level of

9  administrative review, grievances nos. MCSP-18-04088 and MCSP-18-05039.  (ECF No. 31-4 at

10  3.)

11        Defendants argue that grievance no. MCSP 18-04088 contained allegations only

12  pertaining to the excessive force incident against defendant Hearn.  Defendants argue that

13  grievance no. MCSP-18-04088 contained no allegation regarding defendant Parham and

14  retaliation.

15        Defendants argue that grievance no. MCSP-18-05039 contained allegations that plaintiff

16  was deprived of his property while he was housed in ad seg.  Defendants argue that grievance no.

17  MCSP-18-05039 did not raise allegations that defendant Parham retaliated against plaintiff by

18  denying him access to his property following his transfer to ad seg.

19        The undersigned has reviewed defendants' exhibits regarding grievance no. MCSP-18-

20  05039.  (ECF No. 31-5 at 50-98.)  In this grievance, plaintiff alleged that his property was lost

21  following his transfer to ad seg.  (<u>Id.</u> at 52.)  This grievance did not allege that defendant Parham

22  retaliated against plaintiff for filing grievances by depriving him of access to his property

23  following his transfer to ad seg.  Grievance no. MCSP-18-05039 contains only a brief reference to

24  defendant Parham in a section of the grievance describing the action requested:  "And C/O

25  Parham staff that delivered 1083 be looked at for previous issues with me."  (<u>Id.</u> at 54.)

26        The undersigned does not find that the brief reference to defendant Parham in grievance

27  no. MCSP-18-05039 put prison officials on notice that plaintiff was alleging that defendant

28  Parham denied him access to his property in retaliation for filing grievances against him.  <u>See</u>

1  Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (a grievance suffices to exhaust a claim if it

2  puts the prison on adequate notice of the problem for which the prisoner seeks redress).

3  Accordingly, the undersigned finds that grievance no. MCSP-18-05039 did not administratively

4  exhaust plaintiff's claim that defendant Parham retaliated against him by denying him access to

5  his property following his transfer to ad seg or any of his other claims against defendants Parham

6  and Hearn.

7         The undersigned has reviewed defendants' exhibits regarding grievance no. MCSP No.

8  18-4088.  (ECF No. 31-5 at 4-48.)  In this grievance, plaintiff alleged that defendant Hearn used

9  excessive force when he shot plaintiff in the face with a 40 mm impact round on September 14,

10  2018.  (Id. at 8-10.)  In this grievance, however, plaintiff did not allege that defendant Hearn

11  allegedly retaliated against plaintiff for filing a grievance against defendant Parham by inciting

12  inmate Sotolongo to attack plaintiff and by shooting plaintiff in the face with the 40 mm round on

13  September 14, 2018.  This grievance also did not allege that defendant Hearn told inmate

14  Sotolongo that plaintiff was a snitch and sent inmate Sotolongo to "handle" plaintiff.  This

15  grievance did not allege that defendant Parham retaliated against him for filing grievances.

16  Accordingly, the undersigned finds that grievance no. MCSP-18-4088 administratively exhausted

17  only plaintiff's claim that defendant Hearn used against excessive when he shot plaintiff in the

18  face with the 40 mm impact round on September 14, 2018.

19         Defendants also presented evidence that plaintiff submitted five additional non-medical

20  grievances during the relevant time period, i.e., MCSP-A-18-02943, MCSP-18-03757, MCSP-A-

21  04645, MCSP-O-19-00914 and MCSP-A-18-04582.  (ECF No. 31-7 at 4.)  Apparently none of

22  these grievances were processed to the third level of review.  (See ECF No. 31-4 at 3.)

23         VI.     Plaintiff's Opposition

24         In his opposition, plaintiff does not dispute the arguments raised by defendants regarding

25  grievance nos. MCSP-18-04088 and MCSP-18-05039.  Instead, plaintiff argues that grievance

26  nos. MCSP-A-18-3757 and MCSP-A-18-4645 exhausted some of his claims.  The undersigned

27  sets forth plaintiff's arguments herein.

28  ////

Plaintiff alleges that on July 4, 2018, he submitted grievance no. MCSP-A-18-2943 alleging that defendant Parham failed to properly process a CDCR 22 form plaintiff submitted to him.  (ECF No. 43 at 6-7.)  Plaintiff alleges that he withdrew grievance no. MCSP-A-18-2943 after a correctional lieutenant assured plaintiff that defendant Parham would act appropriately going forward.  (Id. at 7.)

Plaintiff alleges that on August 30, 2018, he submitted grievance no. MCSP-A-18-3757 alleging that defendant Parham was retaliating against him for filing grievance no. MCSP-A-18-2943.  (Id.)

Plaintiff alleges that on November 26, 2015, plaintiff received a second level response to grievance no. MCSP-A-18-3757.  (Id. at 8.)  Plaintiff alleges that on December 10, 2018, he mailed grievance no. MCSP-A-18-3757 to the Office of Appeals ("OOA") in order to obtain a third level decision.  (Id.)

Plaintiff alleges that on February 12, 2019, the OOA cancelled grievance no. MCSP-A-18-3757 on the grounds that plaintiff had exceeded the time limits in submitting his appeal.  (Id.)

Plaintiff alleges that on February 28, 2019, he submitted a grievance contesting the decision reached by the OOA finding grievance no. MCSP-A-18-3757 untimely.  (Id.)  Plaintiff apparently claims that he did not receive a response to this grievance.

Plaintiff alleges that on November 4, 2018, he submitted grievance no. MCSP-A-18-4645 alleging that defendant Parham was retaliating against him because plaintiff had complained of defendant Parham's misconduct.  (Id.)

Plaintiff alleges that on June 1, 2019, he mailed grievance no. MCSP-A-18-4645 to the OOA for a third level decision.  (Id.)  Plaintiff apparently claims that he did not receive a response to this grievance.

VII.     Discussion

The undersigned herein addresses plaintiff arguments that grievance nos. MCSP-A-18-3757 and MCSP-A-18-4645 exhausted some of his claims.  In discussing these grievances, the undersigned refers to the exhibits submitted by defendants regarding these grievances, rather than the exhibits submitted by plaintiff regarding these grievances, because defendants' exhibits are

1    more legible.

2         *Grievance No. MCSP-A-18-4645*

3         In the reply to plaintiff's opposition, defendants argue that grievance no. MCSP-A-18-

4    4645 has no bearing on exhaustion in this case.  The undersigned disagrees.  For the reasons

5    stated herein, the undersigned finds that grievance no. MCSP-A-18-4645 raised plaintiff's claim

6    alleging that defendant Parham filed a retaliatory rules violation report against plaintiff on August

7    28, 2018.

8         On November 4, 2018, plaintiff submitted grievance no. MCSP-A-18-4645.  (ECF No.

9    31-7 at 82.)  Plaintiff described the subject of his appeal as "retaliation."  (Id.)  Plaintiff alleged

10   that he was appealing a rules violation report, i.e. a "115," apparently issued by defendant

11   Parham.  (Id. at 82.)  Plaintiff alleged that defendant Parham was "targeting" plaintiff.  (Id.)

12   Plaintiff alleged that this was defendant Parham's "tactic to cause me unnecessary punishment for

13   his fraudulent accusation (see other 115s) authored after staff complaint from Parham…"  (Id. at

14   82, 84.)  Plaintiff also alleged that defendant Parham brought plaintiff to ad seg without his

15   personal property.  (Id. at 84.)  Plaintiff alleged that defendant Parham was not part of his

16   placement in ad-seg and should not have been involved with the packing of plaintiff's property.

17   (Id.)

18        Grievance no. MCSP-A-18-4645 was bypassed at the first level of review.  (Id. at 82.)  On

19   May 10, 2019, a second level appeal response was issued in response to grievance no. MCSP-A-

20   18-4645.  (Id. at 78.)  The second level decision states that plaintiff appealed a rules violation

21   report issued by defendant Parham on August 28, 2018.  (Id.)  The second level decision states

22   that on May 3, 2019, Lieutenant Noguchi interviewed plaintiff by telephone regarding this

23   grievance.  (Id. at 79.)  Plaintiff told Lieutenant Noguchi that he "submitted the appeal and stated

24   he still does not have his property."  (Id.)  Plaintiff told Lieutenant Noguchi that he was

25   transferred from MCSP due to safety concerns and his property still has not been sent to him.

26   (Id.)  Lieutenant Noguchi advised plaintiff to file another grievance specifically about his

27   property concerns because the interview concerned only the rules violation report.  (Id.)

28        The second level decision denied plaintiff's grievance.  (Id. at 80.)  The decision stated

10

1  that plaintiff had not presented a compelling argument nor provided new evidence that would

2  warrant a reissuance and a rehearing of the rules violation report.  (Id.)

3      The undersigned finds that grievance no. MCSP-A-18-4645 is relevant to this action

4  because it raised plaintiff's claim that defendant Parham filed a retaliatory rules violation report

5  against plaintiff on August 28, 2018.  While plaintiff also complained in this grievance that

6  defendant Parham placed him in ad seg without his property, the undersigned finds that prison

7  officials properly advised plaintiff that they would not consider this issue and advised plaintiff to

8  file a separate grievance regarding his property concerns.  See Cal. Code Regs. tit. 15,

9  § 3084.2(a)(1) (repealed June 1, 2020) (each grievance is limited to one issue or related issues).[1]

10      The undersigned also finds that grievance no. MCSP-A-18-4645 does not clearly raise

11  plaintiff's claim that defendant Parham filed a retaliatory rules violation report against plaintiff on

12  August 8, 2018.  Instead, this grievance only identified the rules violation report issued by

13  defendant Parham on August 28, 2018, as being allegedly retaliatory.

14      In his opposition to defendants' summary judgment motion, plaintiff argues that he mailed

15  a third level appeal of grievance no. MCSP-A-18-4645 on June 1, 2019, but failed to receive a

16  response.  Defendants' evidence indicates that the OOA did not receive plaintiff's third level

17  grievance for grievance no. MCSP-A-18-4645.[2]  (ECF No. 31-5 at 2.)  The undersigned need not

18  decide whether plaintiff mailed his third level appeal because, for the reasons stated herein, the

19

20  [1] On March 25, 2020, and effective June 1, 2020, California Code of Regulations title 15,

21  sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.  See Hudson v. Neuschmid, 2020 WL 3892864, at *3

22  n.2 (N.D. Cal. July 10, 2020).  The citations in these findings and recommendations are to the regulations in place during the relevant time period, rather than to the current regulations.

23

24  [2] The undersigned observes that the copy of grievance MCSP-A-18-4645 submitted by defendants is different from the copy of this grievance submitted by plaintiff.  In the copy

25  submitted by defendants, the section of the form for plaintiff to complete in order to appeal to the third level of review is blank.  (ECF No. 31-7 at 83.)  In other words, this form indicates that

26  plaintiff did not appeal this grievance to the third level of review.  In contrast, in the copy submitted by plaintiff, the section of the form for plaintiff to complete in order to appeal to the

27  third level of review is completed by plaintiff.  (ECF No. 43 at 32.)  Plaintiff's copy indicates that plaintiff signed his grievance on June 1, 2019.  (Id.)  The undersigned is puzzled by the difference

28  between the grievances submitted by defendants and plaintiff.

11

1   undersigned finds that the lengthy delay in plaintiff's receipt of the second level response

2   rendered administrative remedies unavailable.

3        The relevant regulations provide that all grievances are to be "initially submitted and

4   screened at the first level unless the first level [was] exempted" and under certain circumstances

5   the appeal coordinator can bypass the first level of appeal.  See Cal. Code Regs., tit. 15,

6   §§ 3084.1(a) (repealed effective June 1, 2020); § 3084.7(a) (repealed effective June 1, 2020).

7   The second level is "for review of appeals denied or not otherwise resolved to the appellant's

8   satisfaction at the first level, or for which the first level [was] otherwise waived by these

9   regulations."  Id., § 3084.7(b).  Second level appeals responses must be completed within thirty

10  working days from the date of receipt by the appeals coordinator.  Cal. Code Regs. tit. 15,

11  § 3084.8(c)(2) (repealed June 1, 2020).

12       As discussed above, plaintiff signed grievance no. MCSP-A-18-4645 on November 4,

13  2018.  (ECF No. 31-7 at 84.)  The grievance form states that it was "assigned" on April 24, 2019,

14  with a due date of May 24, 2019.  (Id. at 83.)  The grievance contains a handwritten note by

15  prison staff stating, "Not 7B per Warden 11/5/18."  (Id. at 82.)  The grievance also contains a

16  stamped date of November 6, 2018.  (Id. at 82.)  The section of the form for the date the

17  grievance was received by the appeals coordinator for second level review is blank.  (Id.)

18       The record contains no explanation for why 187 days passed from the date plaintiff

19  signed, and presumably submitted, grievance no. MCSP-A-18-4645 to the date it was decided,

20  i.e., from November 4, 2018, to May 10, 2019.

21       An inmate need not exhaust when circumstances render administrative remedies

22  effectively unavailable.  Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010).  In Ross v.

23  Blake, the Supreme Court agreed, stating the inmate was only required to exhaust those grievance

24  procedures "that are capable of use to obtain some relief for the action complained of."  Ross, 136

25  S. Ct. at 1859.  Ross provided a non-exhaustive list of circumstances where administrative

26  remedies were not capable of use:  (1) where the procedure "operates as a simple dead end"

27  because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates";

28  (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable

of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison

administrators "thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation." Id. at 1859-60.

The Ninth Circuit has characterized the list in Ross as "non-exhaustive." Andres v,

Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017).  Thus, other circumstances may render

administrative remedies unavailable, including the failure of prison officials to properly process a

prisoner's grievance, as cited by the Circuit in Andres:

> Brown v. Valoff, 422 F.3d 926, 943 n.18 (9th Cir. 2005) ("Delay in
> responding to a grievance, particularly a time-sensitive one, may
> demonstrate that no administrative process is in fact available."); cf.
> also Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153
> (3d Cir. 2016) (joining other circuits in holding "a prison's failure to
> timely respond to an inmate's properly filed grievance renders its
> remedies 'unavailable' under the PLRA"); Boyd v. Corr. Corp. of
> Am., 380 F.3d 989, 996 (6th Cir. 2004) ("Following the lead of the
> four other circuits that have considered this issue, we conclude that
> administrative remedies are exhausted when prison officials fail to
> timely respond to a properly filed grievance."); Jernigan v. Stuchell,
> 304 F.3d 1030, 1032 (10th Cir. 2002) ("[T]he failure to respond to a
> grievance within the time limits contained in the grievance policy
> renders an administrative remedy unavailable."); Lewis v.
> Washington, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e refuse to
> interpret the PLRA so narrowly as to permit prison officials to exploit
> the exhaustion requirement through indefinite delay in responding to
> grievances." (alterations and internal quotation marks omitted)).

Andres, 867 F.3d at 1079.

Defendants have failed to produce any evidence explaining the significant delay in prison

officials' second level response to grievance no. MCSP-A-18-4645, as is their burden.  Albino v.

Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  The undisputed evidence demonstrates an

unreasonable delay by prison officials in responding to this grievance.  This unreasonable delay

rendered administrative remedies unavailable to the claim raised in this grievance. [3]

*Grievance No. MCSP-A-18-3757*

Defendants argue that the claims raised in grievance no. MCSP-A-18-3757 are not

---

[3]   An evidentiary hearing is not required as to this claim because "[w]ithout evidence
demonstrating a material fact dispute, this court need not convene an evidentiary hearing."
Garland v. California Department of Corrections, 2017 WL 2833395, at *7 (E.D. Cal. June 30,
2017); see also Hammler v. Davis, 2017 WL 735737, at *10 (E.D. Cal. Feb. 23, 2017).

1    relevant to this action.  The undersigned disagrees.  In this grievance, plaintiff alleged that

2    defendant Parham retaliated against him for filing a grievance against him on July 4, 2018, by

3    filing a rules violation report falsely charging plaintiff with forging a document.  (ECF No. 31-7

4    at 19-21.)  Therefore, this grievance is relevant to plaintiff's claim that defendant Parham filed a

5    retaliatory rules violation against plaintiff on August 8, 2018, charging plaintiff with forging a

6    document.

7            For the reasons stated herein, the undersigned finds that plaintiff has not met his summary

8    judgment burden in demonstrating that he exhausted the claims raised in grievance no. MCSP-A-

9    18-3757.

10           Grievance no. MCSP-A-18-3757 was bypassed at the first level of review.  (Id. at 20.)

11   The second level response to this grievance, processed as a staff complaint, was issued on

12   October 7, 2018.  (Id. at 23.)  On February 12, 2019, plaintiff's third level appeal of grievance no.

13   MCSP-A-3757 was cancelled as untimely at the third level.  (Id. at 18.)  The third level response

14   stated that the second level response was returned to plaintiff on October 23, 2018.  (Id.)  The

15   envelope to the OOA was postmarked on December 10, 2018, and received by the officer on

16   December 14, 2018.  (Id.)  The response stated, "This exceeds time constraints to submit for third

17   level review."  (Id.)  The response advised plaintiff that he could file a separate appeal regarding

18   the cancellation decision.  (Id.)

19           In order to exhaust administrative remedies, plaintiff was required to appeal the

20   cancellation decision by mailing a grievance to the OOA challenging the cancellation decision.

21   See Villery v. Beard, 2019 WL 250532, *10 (E.D. Cal. Jan. 17, 2019) (citing Wilson v. Zubiate,

22   718 F.App'x 479, 482 (9th Cir. 2017) ("[Plaintiff] had the possibility of appealing the

23   cancellation decision and therefore cannot show that he was 'thwarted by improper screening'

24   under Sapp, 623 F.3d at 823."); see Code Regs. tit. 15, § 3084.6(e) (repealed June 1, 2020) ("If an

25   appeal is cancelled at the third level of review, any appeal of the third level of cancellation

26   decision shall be made directly to the third level Appeals Chief." ).

27           As discussed above, defendants submitted evidence that plaintiff did not submit a

28   grievance to the OOA challenging the cancellation decision regarding grievance no. MCSP-A-18-

1    3757.  (See ECF No. 31-4 at 3.)  The burden then shifted to plaintiff to demonstrate that he

2    mailed a grievance to the OOA challenging the cancellation decision.  For the following reasons,

3    the undersigned finds that plaintiff did not meet this burden.

4          In his opposition, plaintiff alleges that he appealed the decision finding grievance no.

5    MCSP-A-3757 untimely.  Attached to plaintiff's opposition is a grievance allegedly signed by

6    plaintiff on February 28, 2019, challenging the cancellation decision.  (ECF No. 43 at 36-37.)

7    The grievance contains no indication that it was received by the OOA.  (Id.)  Plaintiff apparently

8    claims that he received no response to this grievance.

9          Plaintiff has provided no evidence that he mailed the grievance to the Appeal Chief, such

10   as a proof of service, a mail log or a CDCR 22 form requesting information regarding this

11   grievance.  See Ekene v. Galapon, 2020 WL 4032669, at *5 (C.D. Cal. May 12, 2020) (prisoner's

12   proof of service that he mailed appeal of cancellation decision, as well as two CDCR Form 22

13   requests for a response to the appeal bearing signatures of prison staff, considered evidence that

14   prisoner mailed appeal).

15         Because defendants presented evidence that the OOA did not receive plaintiff's grievance,

16   the undersigned finds that plaintiff's submission of the grievance alone is not sufficient evidence

17   that he mailed the grievance to the OAA.  In other words, to meet his summary judgment burden,

18   plaintiff must do more than submit a copy of the grievance he claims he mailed to the OOA.

19         Because plaintiff has not met his summary judgment burden, the undersigned finds that

20   plaintiff did not exhaust all available remedies with respect to his claim that defendant Parham

21   retaliated against him by filing a rules violation report charging plaintiff with forgery.[4]

---

22   [4]   The undersigned is mindful that a court may not disregard a piece of evidence at the summary
23   judgment stage solely based on its self-serving nature.  Nigro v. Sears, Roebuck & Co., 784 F.3d
     795, 495, 497 (9th Cir. 2015).  The undersigned is not making a credibility determination
24   regarding the grievance plaintiff alleges he filed regarding the cancellation decision.  Instead, the
     undersigned is making a finding that, based on the other evidence discussed above, the grievance
25   alone does not meet plaintiff's summary judgment burden demonstrating that he actually mailed
     the grievance.
26         The undersigned also finds that an evidentiary hearing is not required as to this claim
27   because "[w]ithout evidence demonstrating a material fact dispute, this court need not convene an
     evidentiary hearing."  Garland v. California Department of Corrections, 2017 WL 2833395, at *7
28   (E.D. Cal. June 30, 2017); see also Hammler v. Davis, 2017 WL 735737, at *10 (E.D. Cal. Feb.

1     VIII.   Conclusion

2          As discussed above, defendants presented evidence that plaintiff submitted three

3     additional grievances during the relevant timeframe:  MCSP-A-18-2943, MCSP-O-00914 and

4     MCSP-A-18-4582.  The undersigned does not address these grievances because neither party

5     claims that these grievances are relevant to the claims raised in the instant action.

6          For the reasons discussed above, the undersigned finds that grievance no. MCSP-A-18-

7     05039 (addressed in defendants' summary judgment motion) did not administratively exhaust any

8     of the claims raised against defendants Parham and Hearn.  The undersigned also finds that

9     grievance no. MCSP-A-18-4088 (addressed in defendants' summary judgment motion)

10    administratively exhausted only plaintiff's claim alleging that defendant Hearn used excessive

11    force.

12         For the reasons discussed above, the undersigned finds that grievance no. MCSP-A-18-

13    3757 (raised in plaintiff's opposition) did not administratively exhaust any claims raised against

14    defendants Parham and Hearn.  The undersigned also finds that, based on the untimely second

15    level response to grievance no. MCSP-A-18-4645 (raised in plaintiff's opposition) plaintiff

16    exhausted his claim alleging that defendant Parham filed a retaliatory rules violation report

17    against plaintiff on August 28, 2018.

18         If these findings and recommendations are adopted, this action will proceed on the

19    following claims:  1) defendant Hearn used excessive force, in violation of the Eighth

20    Amendment, when he allegedly shot plaintiff in the face with a 40 mm impact round on

21    September 14, 2018; 2) defendant Parham retaliated against plaintiff for filing grievances by

22    filing a rules violation report against plaintiff on August 28, 2018; and 3) defendant Erickson

23    provided inadequate medical care in violation of the Eighth Amendment when defendant

24    Erickson allegedly failed to treat plaintiff for the injuries plaintiff suffered as a result of being

25    shot in the face with the 40 mm impact round on September 14, 2018.

26    ////

27    _____

28    23, 2017).

1    Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall appoint a

2  district judge to this action; and

3    IT IS HEREBY RECOMMENDED that defendants' motion for partial summary

4  judgment (ECF No. 31) be granted but for the claim that defendant Parham retaliated against

5  plaintiff for filing grievances by filing a rules violation report against plaintiff on August 28,

6  2018.

7    These findings and recommendations are submitted to the United States District Judge

8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

9  after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

12  objections shall be filed and served within fourteen days after service of the objections.  The

13  parties are advised that failure to file objections within the specified time may waive the right to

14  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15  Dated:  October 20, 2020

16

17  Thor1974.sj
                                        KENDALL J. NEWMAN
18                                      UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

17